JOHN STINER, *Plaintiff in Error*, v. STATE OF FLORIDA, *Defendant in Error*.

### Opinion Filed December 19, 1919.

1.  The question of whether admissions and confessions are made freely and voluntarily is for the court to determine, and to enable it to do this, there should be a preliminary investigation by the court in the absence of the jury.

2.  While it is the better course to interpose objections to the introduction of evidence of admissions or confessions, the failure to do so does not relieve the trial judge of the duty to satisfy himself by an examination conducted in the absence of the jury that the admissions were made freely and voluntarily before admitting them.

3.  Testimony examined and found sufficient to support the verdict.

A Writ of Error to the Circuit Court for Columbia County; M. F. Horne, Judge.

Judgment affirmed.

*J. B. Hodges* and *Guy Gillen*, for Plaintiff in Error;

*Van C. Swearingen*, Attorney General, and *D. Stuart Gillis*, Assistant, for the State.

BROWNE, C. J.—John Stiner was convicted of larceny of money belonging to the Columbia County Bank, consisting of 600 one-dollar bills, 200 half dollars and 1,400 pennies.

The defendant, a negro boy employed at the bank, was seen on the morning when the offense is alleged to have

been committed to go into the vault where the lost money had been placed in a pasteboard box, and to come out with a box, and almost immediately afterwards was seen on the street with a package under his arm by Mr. Summers, the cashier of the bank, who asked him if he had been sent off on an errand, and he replied that he had been down to a store to exchange a pair of shoes. A few hours afterwards, when the money was missed, Mr. Green, the assistant cashier, and Mr. Summers questioned the defendant, who at first denied having taken it and then admitted it, and said that he would go and get it and bring it the next morning. He was told that he must get it that afternoon, and Green and Summers took him in a car and went to the house where the defendant lived, where he met his brother and after some conversation between him and his brother, the latter told him to brace up and tell them that he did not get the money. The boy went into the house and did not come out, and a warrant was then taken out for him and he was arrested.

We do not think it necessary to discuss the first, second and third assignments of error, because even if the testimony sought to be excluded had not been introduced, there was ample testimony upon which the jury could find a verdict of guilty, and the admission of this testimony, if error, was not harmful.

The other assignments of error relate to the introduction of evidence of admissions made by the defendant, except the seventh, which attacks the relevancy of the evidence of the witness Shackleford about the money found in the house where the defendant lived.

It is not necessary to discuss these assignments of error *seriatim* as the same fundamental question is involved in them all.

All the circumstances surrounding the conversation with the defendant at the bank before his arrest were fully testified to by the witnesses, and we cannot say that the admissions were not made freely and voluntarily and without any threats or promises being made to him. The testimony of Green and Summers as to the admissions was uncontradicted and went to the jury without objection, and no motion to strike it was made, and no assignment of error predicated thereon.

The question of whether admissions and confessions are made freely or voluntarily, is for the court to determine, and to enable it to do this, there should be a preliminary investigation by the court, and this examination should be made in the absence of the jury. Harrold v. Oklahoma, 169 Fed. 47, 94 C. C. A. 415, 17 Ann. Cas. 868; State v. Ruck, 194 Mo. 416, 92 S. W. 706, 5 Ann Cas. 976; Berry v. State, 4 Okla. Crim. 202, 111 Pac. 676, 31 L. R. A. (N. S.) 849; State v. Wells, 35 Utah 400, 100 Pac. 681, 136 A. S. R. 1059. "It is clear that the proof upon the question whether the confession is voluntary or involuntary, which generally consist of the examination and cross-examination of witnesses, cannot be presented without detailing much of the substance and some of the contents of the confession, or if the confession is in fact incompetent, without the practical introduction of the incompetent confession in evidence before the jury in order to determine its incompetency. Such a practice is nothing but a farcical evasion of the rule of evidence and the constitutional guaranty which exclude an involuntary confession. A decision that such a confession

incompetent and inadmissible is of little avail to a defendant after officers of the law have testified to the method of its procurement and to much of its contents; and the only rational way to protect and enforce the rights of the accused is to exclude from the jury all the evidence relative to the competency of the confession, at least until the court has found it competent." 1 R. C. L. 579 and 580; Harrold v. Oklahoma, 159 Fed. 47.

While we think it is best for counsel to interpose objections to the introduction of evidence of admissions or confessions, in order that the court may make the preliminary investigation to determine its admissibility, that does not relieve the trial judge of the duty when evidence of this character is sought to be introduced to satisfy himself that the admissions were freely and voluntarily made before admitting them. It is a duty which the law imposes upon the court in order that the prisoner's constitutional right to a fair and impartial trial may be protected and preserved, and this right should not be made to depend on the skill and alertness of counsel, otherwise courts, instead of being the forum in which justice alone is the object to be attained, would become games played by the respective counsel and won or lost according to their skill in playing the game according to the rules. If the court had ruled that this testimony was inadmissible, but had conducted the examination to determine whether the admissions were made freely and voluntarily, in the presence of the jury, a different question would be presented which is not now ruled on.

As all facts and circumstances surrounding the conversation with the defendant and his alleged admissions were fully inquired into and it appearing that the same

were free and voluntary, the assignments of error based upon the admissions of this testimony are not sustained.

The testimony that the witness Lindler who heard only the admissions made to Summers and Green is objected to because he was not present during the entire conversation, and did not know what transpired before he heard the admissions. He was questioned about the conversation that Summers and Green had previously testified about, and as it appeared from their testimony that the admissions were free and voluntary, it was competent for him to testify as to what the defendant said. However, as his testimony was only cumulative, its admission could not harm the prisoner, in view of all the other testimony in the case.

Error is assigned on the admission of the testimony of the witness Shackelford as to finding $166.50 in a trunk in a house of the defendant's grandmother with whom he lived, upon the ground that the money found was all in silver (dollars and half dollars) and the indictment alleged and testimony proved that the money stolen consisted of $600.00 in one-dollar bills, $200.00 in silver half dollars, and $14.00 in pennies.

The witness testified that there was grit and dirt on the money and there was testimony that the defendant at one time offered to get the money and went out in the yard and got a hoe and shovel and dug around but never found it, thus indicating that it had been buried, which accounted for the grit and dirt, and raised the presumption that the money found in the trunk was part of the stolen money. There was no error in admitting this testimony.

F. P. Cone, president of the bank, testified that he was out of the city at the time the money was stolen, but

learned of it as soon as he returned, and at once went to the jail and talked with the prisoner. He was thoroughly examined as to whether the admissions made by the prisoner were free and voluntary, and it appears that they were. He told Mr. Cone that he had turned the paper money over to his brother to have it changed and he had buried it and couldn't find it. He testified that the prisoner told him he had taken from the bank six hundred dollars in bills and one hundred dollars in silver and pennies. At the concluison of his testimony a motion to strike it was made upon the ground that it was not a free and voluntary admission; which the court denied. This is made the basis of the eleventh assignment of error. The examination of this witness to disclose whether the admissions made to him were free and voluntary is subject to the same criticism that we have made about the examination of the witnesses Summers and Green; that is, that it was made in the presence of the jury and before the court had decided its admissibility. However, as the court admitted it, and we think properly, no harm was done the prisoner from the fact that examination was conducted in the presence of the jury. As we have said, if the court had refused to allow the testimony of the admissions to go to the jury, a different question would be presented.

We think the testimony fully supports the verdict, and finding no reversible error, the judgment is affirmed.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.