BURNARD WHITTEN, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion Filed August 12, 1921.

When a minor of apparent subnormal mentality, is without any notice of the charge of a crime against him, having been given to his parent or guardian as is required by the statute, put upon trial and convicted of murder in the first degree, and a consideration of the entire record indicates that justice requires a new trial wherein the essential requirements of law are complied with, the judgment of conviction will be reversed for appropriate proceedings.

A Writ of Error to the Circuit Court for DeSoto County; George W. Whitehurst, Judge.

Reversed.

*W. D. Bell*, for Plaintiff in Error;

*Rivers H. Buford*, Attorney General, and *J. B. Gaines*, Assistant, for the State.

PER CURIAM.—Burnard Whitten was convicted of murder in the first degree for the homicide of his wife and capital punishment was adjudged. A writ of error was taken.

The accused was shown to be under the age of twenty-one years. The provisions of Chapter 6221, Acts of 1911, were not complied with as to giving notice to parents or guardians of minors who are charged with crime. Without deciding whether the failure to give the notice to parents or guardians, prior to the trial, as required by the statute, was rendered immaterial by Chapter 7364, Acts of 1917,

removing the disabilities of male minors who have been married, or whether such failure to notify the parent or guardian constituted harmless error under Chapter 6223, Acts of 1911, and without determining whether the admission of evidence as to a confession of the accused was erroneous or whether such error, if any, was rendered immaterial by the defendant's own testimony, the court is of the opinion that upon a consideration of the entire record, and in view of the extreme penalty imposed, justice requires a new trial. When the defendant took the stand to testify, he was asked: ''Q. You know what you are charged with here, don't you? A. Yes, sir. Q. What is it? A. Charged with murder. Q. All right, tell this jury here, these twelve men, all about this affair. Tell them in your own language.'' The defendant's testimony indicates that he is perhaps not of normal mentality, which makes it important that he should have the assistance of his parent or guardian, if he has one, and the aid of careful counsel to conserve his defense to the extent at least of fully developing the mental responsibility of the accused and of showing mitigating circumstances, if any.

Reversed for a new trial.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, J. J., concur.

WEST, J., dissents.

WEST, J., Dissenting—Plaintiff in error, referred to herein as defendant, was indicted upon a charge of murder in the first degree. The person alleged to have been murdered was his wife. He was charged with having shot her, inflicting a mortal wound from the effect of which she im-

mediately died. Upon a trial defendant was represented by counsel appointed by the court. The verdict was guilty as charged. Sentence of death was imposed. There was no motion for a new trial. Writ of error was taken from this court to review the judgment.

Under the first assignment it is contended that there was error in not submitting to the jury the question of whether an alleged confession of defendant was voluntary.

The confession, evidence of which was offered and objected to, was made by the defendant to the sheriff of the county in his office in the courthouse in the presence of several other persons soon after defendant was taken into custody. The sheriff was called as a witness by the State to give evidence of this confession. The jury was withdrawn while inquiry was made upon the question of whether the confession was voluntarily made. Upon this point, after direct examination by the State Attorney in which the witness testified that no reward was held out and no threats were made in order to induce defendant to make a statement, the following evidence was given by the witness upon cross examination: "Q. Sheriff, what was the object and purpose of removing him from the jail to your private office? A. My object was to get a statement from him. I hadn't interviewed him since the killing up until then. I felt it was my duty to interview him and get a statement from him. Q. Did you at that time tell him that he was under no obligation to make a statement if he didn't want to? A. I told him not in those words. I told him that—if you wish I will tell you the conversation. Q. All right, sir. A. I says, Mr. Whitten, probably you realize the seriousness of what you are accused with. I says, I would like to have you make a statement to me if you feel like it but before making this statement I want to warn you that

any statement you make will be used against you at your trial, and I cautioned him in the presence of all these witnesses who were in my room, before he ever made any statement at all. I didn't say it would probably be used against him. I told him it would be used against him. I says, don't tell me anything but the truth about it and he said, Sheriff, I will tell you nothing but the truth about it. * * * Q. Then you examined him? A. Wait, now, I will tell you how that happened. I laid the matter before him, exactly the case that I had and what was confronting him before he ever made any further statement and after I laid this matter before him he then said he would tell me the whole matter about it, which he did. Q. Why did you inform him of what you knew about it? A. Why, be· cause I have run up with just the same proposition I have run up against here, time and again, and I felt that was the best way to get a true statement, to let him know I wasn't misleading him, and I have found in my experience the best way to get a true statement from the defendant is to let him know you are not misleading him, to lay the matter before him and then he will have more confidence in you and feel like making a true statement. * * * By the Court: Q. Do I understand you to say you told him he needn't make a statement unless he felt like it? A. I told him this, Judge; that I would like to have a statement from him relative to the killing, and I said, you understand there is a serious charge placed against you and I haven't had any chance to talk with you about this. Any statement you will make will be used against you and be sure and tell me the truth. That is the way it came up. I sent for him over at the jail. Q. Did you give him to understand he didn't have to make a statement? A. Well, no, I didn't tell him those words. I·didn't tell him he had to make one either. Q. I understand you to say a few

minutes ago that you told him that you would like for him to make a statement if he felt like making one? A. No, sir, I said, Mr. Whitten, it has come my duty now to talk to you and I would like to get a statement from you. Told him who I was. I had never seen him. I said, this is the sheriff and beforehand I want to caution you I says, this is a serious charge that has been lodged against you and I want whatever statement you—I want to tell you whatever statement you will make I will have to use it in the court against you and I want you to be careful and don't tell me anything but the truth, and he proceeded and told me all right, he would, and then you remember what I told you that Whitten said.'' Other evidence was taken upon this point. The defendant himself denied that his statement was voluntary and said in substance that the confession which he made was extorted from him by threats. He was contradicted in this by others who were present. The Court ruled that the evidence of the confession was admissible. The jury was recalled and evidence of defendant's confession to the effect that he shot and killed the deceased in the manner charged in the indictment was offered.

Unless a confession was freely and voluntarily made it is not admissible against a person charged with crime, but it is the province of the court and not of the jury to determine in the first instance whether such confession 'was voluntary. If the Court decides that the confession was voluntary, it admits the evidence. If it decides that the confession was not voluntary it excludes the evidence and it does not go to the jury. Bates v. State, 78 Fla. 672, 84 South. Rep. 373; Stiner v. State, 78 Fla. 647, 83 South. Rep. 565; Sims v. State, 59 Fla. 38, 52 South. Rep. 198; 1 R. C. L. p. 577.

In Bates v. State, *supra*, the Court said: ''The question

of whether an admission is freely and voluntarily made is for the court to determine and it is not a matter of the opinion of the witness. The proper method is to have the witness state the circumstances under which they were made so that the Court and not the witness may determine if they were free and voluntary. This investigation should be made in the absence of the jury.'' See also Stiner v. State, *supra*. The proceeding in the case under consideration seems to be in accord with this holding.

Where it appears *prima facie* that a confession was voluntary the burden then shifts to the defendant to show that it was in fact involuntary, and a confession made by an accused while in the custody of an officer is not for that reason inadmissible if it appears that the confession was voluntarily made. McDonald v. State, 70 Fla. 250, 70 South. Rep. 24; Sims v. State, *supra;* McNish et al. v. State, 47 Fla. 69, 36 South. Rep. 176; Green v. State, 40 Fla. 474, 24 South. Rep. 537. In this case, after the trial judge had satisfied himself from an investigation made in the absence of the jury that the evidence was voluntary and therefore competent, no evidence was produced by defendant which might have tended to show that the confession was obtained by improper methods for the purpose of affecting its credibility or rendering it incompetent.

Error is predicated upon the action of the Court in allowing part of the testimony to be taken in the absence of the jury and in making the ruling in the presence of the jury that the confession was voluntary. From the discussion of the preceding assignment it is apparent that there is no merit in this contention. This court has said that the investigation upon the question of whether a confession was freely and voluntarily made should be in the absence of the jury. And it cannot be urged as error that

the Court ruled in the presence of the jury that evidence of the confession was admissible when immediately afterwards such evidence was offered and admitted for consideration by the jury. Permitting the evidence to be offered necessarily meant that it was competent, and ruling that it was admissible added no weight to the evidence itself.

It is also assigned as error that the Court failed to caution the defendant that he was not compelled to give testimony that was self incriminating.

When the State had offered its evidence and rested, the defendant was sworn as a witness in his own behalf. He was examined by counsel representing him and was asked to tell the jury all about the alleged homicide. He made a statement in which he admitted killing his wife. When asked if he had anything further to say he said no, except to beg the mercy of the court. There was no cross examination.

Where a defendant in a criminal prosecution voluntarily offers himself as a witness to testify in his own behalf he thereby puts himself on the same footing as any other witness and after voluntarily giving incriminating evidence it cannot be said that he has been compelled to be a witness against himself. Brown et al. v. State, 80 Fla. 741, 86 South. Rep. 574; Daly v. State, 67 Fla. 1, 64 South. Rep. 358; Clinton et al. v. State, 53 Fla. 98, 43 South. Rep. 312; Maloy v. State, 52 Fla. 101, 41 South. Rep. 791; Pittman v. State, 51 Fla. 94, 41 South. Rep. 385; Wallace v. State, 41 Fla. 547, 26 South. Rep. 713; Copeland v. State, 41 Fla. 320, 26 South. Rep. 319; Milton v. State, 40 Fla. 251, 24 South. Rep. 60; Wood v. State, 31 Fla. 221, 12 South. Rep. 539. Neither can error be predicated upon the court's failure to caution a defendant when he is testifying in his

own behalf that he is not compelled to give self-incriminating evidence when the Court has previously appointed counsel· to represent him and such counsel are present representing defendant and in the actual, active conduct of the case for him.

It is also urged that the Court erred in putting defendant on trial or pronouncing judgment against him without giving notice to his parents or guardian or other relative as the law prescribed, the defendant then not being married and being a minor. This contention seems to be based upon the theory that such notice is necessary under the provisions of Section 3926a, Florida Compiled Laws, 1914. By Chapter 7364, Acts of 1917, Laws of Florida, the disabilities of non-age of all male minors who were then married, who had been married or who may thereafter become married were removed, and it would seem that this is a sufficient answer to this contention, it appearing from the record that defendant was married, the charge upon which he was convicted being the murder of his wife. But if the statute just referred to should be limited in its application and the language should be construed as a removal of civil disabilities only of minors upon their marriage, the failure to notify the parent or guardian or other relative in this case, assuming that no such notice was given, the record being silent on the point, is not sufficient to require a reversal since it is not apparent that error, if there was any, has resulted in a miscarriage of justice.

Upon the same ground and for the same reason it cannot be well said that there was harmful error requiring a reversal of the case in admitting evidence of the confession of defendant, since, as we have seen, he admitted the killing while testifying in his own behalf on the trial of the case.

By Section 2812, Revised General Statutes of Florida, 1920, it is provided that no judgment shall be set aside or reversed or new trial granted by any court of the State of Florida, in any cause, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure, unless in the opinion of the Court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice.

An examination of the record in this case discloses no error of procedure requiring a reversal of the judgment. It is true that the defendant himself says that his mind is weak. This, however, is not corroborated by any other witness and he seems to have had sufficient mental capacity to deliberately plan and stealthily execute the murder which he admits he committed and to successfully evade for several days thereafter the officer of the law charged with the duty of apprehending him. With this admission of guilt in the record there would seem to be little demand for a discussion of questions of procedure. The law and not the court fixes the penalty for the crime. This Court may reverse the judgment of conviction because questions propounded to defendant by his own counsel do not seem to be properly phrased or because justice may seem to require a new trial, but there is not, in my opinion, reversible error appearing in the record and I therefore dissent.