BURNARD WHITTEN, *Plaintiff in Error*, v. THE STATE OF
FLORIDA, *Defendant in Error.*

Opinion Filed July 7, 1923.

Petition for Rehearing Denied September 15, 1923.

1. The provisions of Section 12, Chapter 8513, Laws of Florida,
1921, creating the County of Hardee from a part of the terri-
tory of the County of DeSoto, with the delivery of an indict-
ment charging a capital offense, returned by a grand jury of
DeSoto County prior to the enactment of this statute, to the
clerk of the circuit court of Hardee County, as required by
the statute, operate to transfer the case to that county and
confer jurisdiction upon the circuit court in and for Hardee
County to hear and determine it.

2. Allegations of an affidavit of defendant in support of a mo-
tion in arrest of judgment setting up irregularities in the
arraignment of defendant are not sufficient to overthrow
formal record entries contained in the minutes of the pro-
ceedings reciting the due arraignment of the defendant of
which the trial court takes notice.

3. The trial court denied a motion in arrest of judgment. The
motion was supported by an affidavit of defendant to the
effect that when called for arraignment and asked if he an-
swered to the name of "Whidden" as stated in the indictment,
replied that he did not but that his name was "Whitten,"
whereupon the state attorney announced that he would have
the error corrected but continued to read the indictment,
reading it through, after which the defendant made a state-
ment to the court and the court announced that he would not
accept the plea tendered by the defendant but would appoint
an attorney to represent him, and thereafter the court did ap-
point attorneys to represent him, but he was never arraigned
in the presence of said attorneys and in fact never entered
any plea to the indictment. The record cites and the trial
judge certifies that the defendant, "being duly arraigned ac-
cording to law, did in his own proper person plead not

guilty." In the indictment contained in the transcript of the record and in the original indictment sent to this court for inspection the name of the defendant is given as "Whitten." There is no question of the identity of the defendant. *Held*: no error, upon the theory that formal record entries of proceedings, made during the progress of the trial under the direction and supervision of the trial court which import verity, may not be impeached by an affidavit of the defendant contradictory of the record.

4. The defendant was convicted of the murder of his wife. Being less than twenty-one years of age, it is contended that at the time of his trial he was a minor and not married and that the provisions of section C028, Revised General Statutes, required that notice of the charge to his parents or guardian should have been given "prior to the trial." After the trial jury was empaneled and some of the state's witnesses had been examined, one of the defendant's counsel was appointed his guardian ad litem. He accepted the appointment. In an affidavit filed by this guardian ad litem in support of a motion for new trial, he states "that he is guardian and of counsel for Burnard Whitten, the defendant named in the within motion. That he was present throughout the trial of the defendant." *Held*: that even if the omission to appoint the guardian and give notice "prior to the trial" was technically erroneous, it cannot, under the circumstances, be said to require a reversal of the judgment, upon the theory that it is injury resulting from error, not error alone, that warrants an appellate court in reversing a judgment of conviction upon an indictment for crime.

5. If each of several confessions of the same crime is complete in itself, the first or any of them may be involuntary and inadmissible in evidence, and the subsequent confession or confessions voluntary and admissible in evidence.

6. The question of whether admissions and confessions are made freely and voluntarily is for the court to determine, and to enable it to do this, there should be a preliminary investigation by the court in the absence of the jury.

7.  When it appears prima facie that a confession was freely and voluntarily made, the burden is upon the defendant to show that it was in fact not a voluntary confession.

8.  Where the evidence is sufficient to support a verdict of guilty, and the defendant has confessed that he committed the homicide with which he is charged, and two juries of twelve men each, after hearing the evidence, have returned a verdict of guilty without recommendation to mercy, and such verdict has twice received the sanction of the trial judge, and there is nothing in the record to indicate that the jury were influenced by anything other than a due consideration of the evidence, the judgment of conviction will not be disturbed, even though there may have been technical errors of procedure, not infringing any fundamental right of defendant, in the trial of the case.

9.  Evidence examined and found insufficient to overcome the legal presumption of sanity of the defendant, or, considering all the evidence, to require a finding of reasonable doubt of guilt.

A Writ of Error to the Circuit Court for Hardee County; George W. Whitehurst, Judge.

Affirmed.

*W. D. Bell* and *A. Yancey Teachy,* for Plaintiff in Error;

*Rivers Buford,* Attorney General, and *M. C. McIntosh,* Assistant, for the State.

WEST, J.—This cause is here for a second time. (Whitten v. State, 82 Fla. 181, 89 South. Rep. 421.) On a former writ of error the judgment of conviction of murder in the first degree was reversed and upon a second trial there was a verdict of guilty and sentence of death was again imposed. To review this judgment writ of error

was taken from this Court. The facts sufficiently appear in the former opinion and dissenting opinion.

The indictment was found and returned by a grand jury in and for DeSoto County at the spring term in the year 1920. Subsequently and during the regular session of the Legislature of 1921, DeSoto County was divided and from portions of it other counties, including the County of Hardee, were created. Chapter 8513, Acts of 1921.

Before proceeding with the trial in the Circuit Court of Hardee County the defendant, on the 7th day of October, 1921, interposed a plea to the jurisdiction of the Court upon the ground that the indictment is a finding of a grand jury of DeSoto County and is not an indictment of a grand jury of the Circuit Court of Hardee County, that there had been no change of venue of the case from the former to the latter county, and that the indictment had never been legally transferred to and filed in the Circuit Court of Hardee County. Upon motion of the State Attorney this plea was stricken. The indictment, by endorsement upon it, shows that it was filed in the office of the Clerk of the Circuit Court of Hardee County on August 16, 1921. The statute creating Hardee County by Section 12, provides: "All actions, suits and prosecutions, and all proceedings in guardianship or administration, and all other actions, suits, prosecutions or proceedings that may be pending in DeSoto County in any Court or before any officer or board of said county, upon this act going into effect whereof any court, officer or board of any one of said new counties would have had jurisdiction if said county had been in existence when such action or proceedings were instituted, shall be transferred to the court, officer or board of such new county having jurisdiction of such matters, and all pleadings, papers and documents in any way pertaining to any such action, prosecution or pro-

ceeding, shall be delivered by the clerk or other officer, court or Board of DeSoto County having custody thereof, to the proper officer, court or board of such new county.'' This section, with the delivery of the indictment as required by the statute to the Clerk of the Circuit Court of Hardee County, operated to transfer the cause to that county and to confer jurisdiction upon the Circuit Court in and for Hardee County to hear and determine it. The plea to the jurisdiction was without merit. There was therefore no error in granting the motion to strike it, nor was there error in overruling the demurrer interposed to the indictment, nor in denying the motion in arrest of judgment presenting the same question.

In support of the motion in arrest of judgment is an affidavit of defendant in which it is stated, in substance, that upon his arraignment preceding the first trial, when asked whether he answered to the name of Burnard Whidden he replied that he did not answer to the name of Burnard Whidden, but that his name was Burnard Whitten; whereupon the State Attorney announced that he would have the error corrected, but continued to read the indictment, and after it had been read asked the defendant whether he was guilty or not guilty; that thereupon the defendant made a statement to the court and the court announced that he would not accept a plea from him, but would appoint an attorney or attorneys to represent him, and that sometime thereafter the court did appoint attorneys to represent him but that he was never arraigned in the presence of said counsel and never in fact entered any plea to the indictment. In the brief of counsel for defendant they state it is their belief ''that the State Attorney took this indictment again to the grand jury and that they without taking the trouble to prepare a new indictment had the name *Whidden* erased and the name *Whitten*

written therein.'' The name of the defendant as it appears
in the indictment set out in the transcript of the record is
Burnard Whitten. The record shows an arraignment and
plea of not guilty. The record also contains a certificate
of the trial judge that the defendant was duly arraigned
upon the indictment in the case prior to the first trial and
upon such arraignment plead guilty, but the court declined
to accept this plea of guilty of murder in the first degree
and caused the clerk to enter a plea of not guilty. Upon
the issue made by this plea to the indictment there have
been two trials, both resulting in a verdict of guilty of
murder in the first degree. The record shows that the
defendant was duly arraigned and that he was indicted
and tried in the name which, according to the allegations
of his affidavit, is his true name. There is no question
about the identity of the defendant. To consider this
alleged irregularity of procedure would take us outside the
transcript of the record which is verified by the court from
which it comes.

During the progress of the trial an order was made by
the trial court appointing a guardian *ad litem* for defend-
ant, he being a minor, not married, the person alleged to
have been murdered being his wife. From its place in the
record it appears that this order was not made and notice
given ''prior to the trial'' (Sec. 6028, Rev. Gen. Stat.),
but was made after the trial jury was empanneled and
sworn and some of the witnesses in behalf of the State had
testified. After the appointment was made court was ad-
journed until the following day. The person appointed as
his guardian was one of the attorneys representing the
defendant in the trial. This attorney acted for him
throughout the trial. In the affidavit of this attorney and
guardian *ad litem* in support of the motion for new trial,
among other things he said ''that he is guardian and of

counsel for Burnard Whitten, the defendant named in the within motion. That he was present throughout the trial of the said defendant.'' The omission to appoint a guardian *ad litem* for the defendant and give to such guardian ''due notice of such charge prior to the trial thereof,'' it is contended is error which requires a reversal of the judgment. But it is not made to appear that any injury resulted to the defendant because one of his representatives. was not clothed with the authority of guardian *ad litem* from the inception of the trial. On the contrary, it affirmatively appears from the record that the person appointed acted either as counsel or guardian *ad litem,* or both, for the defendant throughout the trial, that his attorney and guardian *ad litem* is still of counsel for defendant, and that he was in both trials and still is represented by other-able counsel. It is hardly conceivable that if injury had resulted to defendant on this account his counsel would be unable to point it out. The omission of the court to make the appointment at an earlier stage of the proceedings, if technically erroneous, was, under the circumstances, not. harmful. Sec. 2812, Rev. Gen. Stat. '

Evidence of an alleged confession by defendant was offered and received in evidence in behalf of the State over objection of the defendant, and this ruling is assigned as error. The witness testifying to the alleged confession was the wife of a brother of the defendant's: deceased wife, for whose murder he was on trial. According to her evidence the conversation between her and the defendant in which the confession was made took place in the jail where the defendant was being held, some time after his incarceration. No one else was in the immediate presence of those engaged in the conversation, except perhaps other prisoners who were not named. So far as the record discloses, no officer was near. The defendant ad-

mitted the killing and inquired where the deceased was buried. During the examination of this witness and in the absence of the jury, counsel for defendant announced to the court that they were prepared to show that the first confession of defendant was made to the sheriff of the county while defendant was in his custody, he being the common jailer of the county, and requested an inquiry by the court if this first confession were voluntary. The Court held that the confession of the defendant to the witness being examined appeared to be voluntarily made and declined to make the inquiry requested, to which ruling there was an exception. The jury returned into the court room and the examination of the witness proceeded, the witness testifying to the confession to her by defendant that he shot and killed the deceased, as alleged in the indictment. Whereupon counsel for defendant moved to strike the evidence of the witness upon the ground that the confession was not shown to have been voluntary and was made while the defendant was still in the custody of the sheriff as jailer of the county, to whom he had previously made a confession alleged to have been involuntary. The Court overruled this motion, stating that it had already been determined by the Court that the confession of the defendant to this witness appeared to be voluntary and that the evidence was therefore competent and admissible, to which ruling there was also an exception. There is nothing in the record, except the statement of counsel in their motion to strike this evidence, to indicate that the defendant had previously admitted his guilt to the sheriff, while in his custody, or that he had been induced by improper means to make such confession. If it had been proved that there was a previous confession and that it had been obtained by such means as would exclude it, there are many authorities to the effect that a subsequent con-

fession of the same or similar facts is not thereby rendered inadmissable, but may and should be admitted if the court conclude, from all the facts and circumstances surrounding it, that the improper influence had been removed. Green v. Commonwealth (Ky.), 83 S. W. Rep. 638; Turner v. State, 109 Ark. 332, 158 S. W. Rep. 1072; State v. Lowry, 170 N. ·C. 730, 87 S. E. Rep. 62; Dixon v. State, 116 Ga. 186, 42 S. E. Rep. 357; State v. Phelps, 138 La. 11, 69 South. Rep. 856; Commonwealth v. Myers, 160 Mass. 530, 36 N. E. Rep. 481; State v. Foster, 136 Ia. 527, 114 N. W. Rep. 36; Andrews v. People, 33 Colo. 103 79 Pac. Rep. 1031; State v. Guild, 10 N. J. L. 163, 18 Am. Dec. 404; State v. Howard, 17 N. H. 171; Thompson v. Commonwealth, 20 Gratt. (Va.), 724; State v. Carr, 37 Vt. 191; Levison v. State, 54 Ala. 520; Simon v. State, 36 Miss. 636. There is nothing in the record to indicate that the confession made to this witness was not voluntary. It appears to have been entirely so. The trial court, as was its duty, so determined upon a preliminary investigation in the absence of the jury. There was no effort on behalf of defendant to prove that there was any consideration inducing it. He, according to the record, tendered a plea of guilty which was not accepted. There was therefore no error in overruling the objection to this evidence. Stiner v. State, 78 Fla. 647, 83 South. Rep. 565; Bates v. State, 78 Fla. 672, 84 South. Rep. 373; McDonald v. State, 70 Fla. 250, 70 South. Rep. 24; Sims v. State, 59 Fla. 38, 52 South. Rep. 198; Fowler v. State, 170 Ala. 65, 54 South. Rep. 115; Godau v. State, 179 Ala. 27, 69 South. Rep. 908; Stone v. State (Ala.), 93 South. Rep. 706; McCleary v. State, 122 Md. 394, 89 Atl. Rep. 1100; Tarasinski v. State, 146 Wis. 508, 131 N. W. Rep. 889; State v. Brennan, 164 Mo. 487, 65 S. W. Rep. 325.

There are many assignments of error based upon rulings

of the trial court overruling objections on behalf of the defendant to evidence offered by the state or excluding evidence offered by the defendant. Even if technical errors were committed in such rulings, no harmful error is made to appear. The evidence is ample to sustain the verdict. Every time the defendant has spoken of which there is any evidence since the homicide, he has confessed his guilt. Two juries of twelve men each have found that the evidence offered by the State proved it beyond a reasonable doubt and have returned a verdict of guilt, which they were instructed beforehand means that he must pay the penalty of death imposed by the law. No fundamental right of the defendant is shown to have been infringed. Ward v. State, 82 Fla. 383, 90 South. Rep. 157; Collinsworth v. State, 82 Fla. 291, 89 South. Rep. 802; Poyner v. State, 81 Fla. 726, 88 South. Rep. 762; Riggins v. State, 78 Fla. 459, 83 South. Rep. 267; Dixon v. State, 77 Fla. 143, 80 South. Rep. 741; Barker v. State, 76 Fla. 164, 79 South. Rep. 436. The alleged homicide appears from the proof offered on behalf of the State to have been committed under circumstances indicating a deliberately planned and premeditated murder. No reversible error is made to appear, so the judgment is affirmed.

WHITFIELD, ELLIS AND TERRELL, J. J., concur.

TAYLOR, C. J., AND BROWNE, J., dissent.

WHITFIELD, J.—Concurring.

On the first trial as shown by the record, the defendant was arraigned and pleaded not guilty to the indictment, and it does not appear that the State Attorney changed the spelling of the defendant's name in the indictment

after the arraignment, even if that would destroy the validity of the indictment to which he had pleaded first guilty and then not guilty and on which he was tried. A re-arraignment at the second trial was not necessary. The only assertion that the indictment on which the defendant was arraigned had been changed as to the defendant's name, is in an affidavit of the defendant presented with a motion *in arrest of judgment* after the second trial. This motion was denied and there is no evidence that the name of the defendant in the indictment was changed from "Whidden" to "Whitten" after the arraignment. There was no plea in abatement or motion charging a change of the name of the defendant in the indictment. He was tried on it twice and made no objection that it was not the indictment as found and presented by the grand jury against him.

Even if Sections 3962 and 3963, Revised General Statutes of 1920, do not modify Section 6028, and it appears that the Court appointed the defendant's attorney as his guardian *ad litem;* and if the order making such appointment does not appear in the minutes at the beginning of the trial it does appear among the day's proceedings and the party appointed as guardian *ad litem* of the defendant was the defendant's attorney who made the first move in the case when it was called for trial. It appears by an affidavit of the guardian in the record that he was appointed such guardian before the trial began, and this does not contradict but sustains the record of the due appointment of a guardian *ad litem* of the defendant.

On the former writ of error it was not held that the confession there received in evidence was error; and even if such confession may be regarded as having been erroneously admitted in evidence, the confession admitted on this trial was made by the defendant under wholly differ-

ent circumstances that removed any incompetency, if any, that may have inhered in the prior confession. Besides the evidence is sufficient to sustain the conviction without the confession.

Sections 2812 and 2818, Revised General Statutes of 1920, forbid reversals for harmless errors; and the defendant has no legal right to a reversal for technical errors of procedure where guilt is charged is duly shown and found.

The identity of the defendant and his guilt of the murder as charged, is fully established and no legal rights of the defendant were violated at the trial. The trial court rendered the judgment that under the law and the evidence may properly have been rendered and the record discloses no prejudicial error.

BROWNE, J.—Dissenting.

As I read the record in this case, five flagrant errors were committed, besides some lesser ones; but who can say that even the lesser errors in no wise influenced the jury in finding its hostile verdict?

First: In the indictment as originally returned by the grand jury, the defendant was described as Burnard "Whidden." When the prisoner was brought before the Court for arraignment, the State Attorney told him to hold up his hand, and asked him whether he answered to the name of Burnard "Whidden." He replied that he did not answer to the name of Burnard "Whidden," but that his name was Burnard "Whitten." The State Attorney then announced that he would have the error corrected, but continued to read the indictment, and at the conclusion asked the defendant if he was guilty or not guilty. The prisoner entered a plea of "guilty," which the Court refused to accept and instructed the Clerk to

enter a plea of "not guilty" for him. The name in the indictment was subsequently changed *fourteen* times, from "Whidden" to "Whitten," as appears from the original indictment sent to this court by order of the Circuit Judge. The erasure of "Whidden" and typing "Whitten" palpably appear therein.

If this change was made by the grand jury, it became a new indictment on which Whitten was not arraigned and did not plead to. If it was not made by the authority of the grand jury, it was a forgery. We must assume the former. Whitten was never arraigned on this changed and in effect new indictment.

Second: Section 6028, Revised General Statutes, 1920, provides as follows: "That when any minor, not married, may be charged with any offense and brought before any of the courts, including municipal courts, of this State, due notice of such charge prior to the trial thereof shall be given to the parents, or guardian of such minor, provided the name and address of such parent, or guardian, may be known to the court, or to the executive officers thereof. In the event that the name of such parent or guardian is not known or made known to the court or executive officer or cannot be reasonably ascertained by him, then such notice shall be given to any other relative or friend whom such minor may designate. The service of notice required by this Section to be given to the parent, or guardian or other person provided herein may be made as the service of summons *ad respondendum* is made, or in the event such parent, or guardian or other person provided herein may be beyond the jurisdiction of the court, then, and in that event, service may be made by registered mail, or by telegram, and return of such service shall be made by the executive officer of the court in the same manner as returns are made upon summons *ad respondendum*."

This statute was enacted to secure to a minor his constitutional right to a fair and impartial trial. Assuming that the prisoner was arraigned and pleaded to the indictment, it was before he was afforded the protection of a guardian *ad litem,* and he was without that protection during the critical period of selecting the jury that convicted him, the guardian not being appointed until *after the jury was selected and sworn.*

The protection this statute is intended to secure for a person accused of crime, should be afforded him through every stage of the trial from the beginning. He was without this protection in everything preliminary to the introduction of testimony.

This statute comes before us for application for the first time since its enactment. Shall we place upon it a construction that will make it the help and protection contemplated by the Legislature by judicial confirmation of the legislative will, or shall we nullify the legislative will and absolve a trial court of its duty or obligation to observe it?

Minors are wards of the Court where their *property rights* are concerned, even without a statute, and they cannot be deprived of these except under the very strictest compliance with all the provisions of the law on the subject. The act under consideration makes minors the wards of the Court where their *lives and liberties* are involved. Shall they be less wards of the Court in a matter of life and death, than they are in the matter of an acre of land or the ownership of an ox?

The necessity for this law may not appeal to every one, but that is not a matter for the courts to pass upon. It is on the statute books and should be enforced in all its strictness, particularly where the life of a human being is involved.

The opinion of the majority of the court in reference to the failure to observe this statute and have a guardian present at the selection of the jury, which is probably one of the most important steps in the trial of a criminal case, says, that "it is not made to appear that any injury resulted to the defendant because," etc.

It is true the only injury that the record discloses is that he is sentenced to death.

When this case was first before this court, we said: "The defendant's testimony indicates that he is, perhaps, not of normal mentality, which makes it important that he should have the assistance of his parent or guardian, if he has one." Whitten v. State, 82 Fla. 181, 89 South. Rep. 421.

Who can say that if this weak-minded, half idiot had had a guardian to help select his jury that the result would not have been different?

Third: The error in admitting the confession alleged to have been made by the prisoner to Mrs. Rosa Nosworthy.

On the former trial of this case, the sheriff was allowed to testify to a confession which was improperly obtained. The confession alleged to have been made to Mrs. Nosworthy was shortly after the alleged confession to the sheriff.

The record in the former trial shows that the confession to the sheriff was improperly obtained and should not have been admitted in evidence. On the second trial the sheriff did not testify to this confession, but Mrs. Nosworthy did, and the confession to her was the result of the confession improperly obtained by the sheriff.

When the Court was inquiring into the admissibility of Mrs. Nosworthy's confession during the absence of the jury, objection to its introduction was made by the defendant, who stated that he was "prepared to show that the first statement, confession, was made to the sheriff while

he was in the custody of the sheriff and the sheriff was a common jailor of DeSoto County and was not in the county jail of DeSoto County at the time he made this statement,'' and asked the court to make inquiry into the means used to secure the first confession.  The Court refused to do this and ruled that the testimony of the witness with regard to the confession to Mrs. Nosworthy was admissible.

The jury was then brought back into court, and in response to a question from the State Attorney, testified to an alleged confession by the prisoner; whereupon the defendant moved the court to strike this testimony because it was not shown to be voluntary, and because the statement was made while he was in the custody of the sheriff of DeSoto County, to whom he had previously made a statement that was involuntary, and because the character of the first statement to the sheriff had not been inquired into by the court.  The court ruled it had already determined that the statement made to Mrs. Nosworthy was a voluntary one, and denied the defendant's motion.

The refusal of the court to make an inquiry into the manner in which the first confession was obtained is clearly error, because upon the method by which the first confession was obtained depended the admissibility of the second confession.  No rule seems to be more clearly settled than, ''If a confession is obtained by such methods as to make it involuntary, all subsequent confessions while the accused is under the operation of the same influences are also involuntary, and when once a confession under improper influence is obtained, the presumption arises that a subsequent confession of the same crime flows from the same influences even though made to a different person from the one to whom it is first made.'' 1 R. C. L. 583.

The authorities are so abundant and so overwhelming on

this proposition that instead of attempting to cite them, I will merely cite cases where they have been compiled. See Note to Daniels v. State (Ga.), 6 Am. St. Rep. 249; Ammons v. State, (Miss.), 18 L. R. A. (N. S.) Notes 857.

The same rule prevails in this State: McNish v. State, 45 Fla. 83, 34 South. Rep. 219. It seems quite clear that the trial court erred in refusing to investigate the method by which the first confession was obtained by the sheriff, as it was only by that means that it could properly decide whether the second confession was admissible.

In the instant case we have a confession obtained by an officer by improper influences, and shortly afterwards the confession repeated to some one else.

When the second confession is sought to be introduced the defendant requested the court to make inquiry into the manner which the first confession was obtained. This the court refused, and admitted the second confession over the defendant's objection, without regard to the influence that had been exerted on the mind of this half-wit by the sheriff when he obtained the first confession.

Such a proceeding is most dangerous; to illustrate: A sheriff or other officer may by threats, by beatings, by promises of immunity, obtain an alleged confession. He may then have some one else interview the prisoner, who upon inquiry, acting from fear or the hope of immunity, repeats the statements made to the officer. Under this decision it would not be error to allow the second statement to be introduced in evidence, and to refuse to investigate how the first confession was obtained.

Fourth: I think the testimony clearly establishes that the prisoner was a moren—a mental deficient, whose mentality was that of a ten year old child,—or rather, he was not as intelligent as the average ten year old child. As this court said in its former decision, "The defendant's

testimony indicates that he is, perhaps, not of normal mentality.''

The testimony would have been much stronger to establish this mental weakness, had the court not erred by persistently refusing to permit the defendant to introduce evidence covering this point.

Fifth:   J. R. Down was a witness on behalf of the defendant.  During his cross-examination, when he seemed to be answering the questions in as frank and intelligible manner as the questions propounded to him were susceptible of, the court broke in upon the proceedings with this remark: ''The demeanor of the witness is not such as the court approves with regard to readily answering the questions and I direct now that the witness fully answer the question or state that he has no knowledge, in order that there may come an end to this.''

This remark by the court could have no other tendency than to discredit the witness with the jury.   Upon this point this court said in Hubbard v. State, 37 Fla. 156, 20 South. Rep. 235: ''The utmost care should always be used by the trial judges, especially in cases where human life is involved, not to let any expression fall, either by questions or otherwise, that is capable of being interpreted by the jury as an index of what he thinks of the prisoner, his counsel or his case.''

See also Lane v. State, 44 Fla. 105, 32 South. Rep. 896; Galloway v. State, 47 Fla. 32, 36 South. Rep. 168; Disney v. State, 72 Fla. 492, 73 South. Rep. 598.   This admonition will be lightly heeded by trial judges if appellate courts condone such expressions.

Some of the errors that I refer to as of lesser weight are only so by comparison with the more serious ones I have discussed.

One of these was allowing the defendant's counsel only fifteen minutes in which to confer with his witnesses before forcing the defendant to trial.

It frequently takes very able counsel many days and sometimes longer to confer with witnesses, digest and arrange testimony and prepare a proper defense. The Court allowed the defendant fifteen minutes.

(1)  The defendant's counsel considered that for a proper appreciation of the testimony, it was necessary that the jury should view the premises where the killing occurred. The court refused this reasonable and proper request.

The witness Dishong testified that he was "trailing a track in the sand right behind him, which the defendant admitted to me he was looking at me when I trailed him.

Upon objection, this testimony was stricken, but the court in doing so said, "I think that is part of a confession." So while the testimony of the sheriff was stricken, the court in effort told the jury that there had been a confession by the prisoner to the sheriff Dishong.

(2)  J. B. Proctor, Whitten's half brother, undertook to testify to the impairment of the defendant's faculties following an attack of typhoid fever.

The Court on motion of the State Attorney struck out all that part of the testimony as to his opinion of the condition of the defendant's mind.

In view of the finding by this court that the defendant was not of normal mentality, the trial court should have been most liberal in permitting any testimony that would tend to throw light upon his mental responsibility, rather than excluding it and sending a half-wit to the gallows.

(3)  The same criticism is made of the rulings of the court on objections to other testimony on behalf of the

5—Vol. 86.

defendant tending to enlighten the jury as to his mental condition.

The errors complained of not only "resulted in a miscarriage of justice," but being violations of the defendant's constitutional right to a fair and impartial trial, and in violation of well settled principles of law, worked in themselves a miscarriage of justice.

For these and other errors, I think the judgment should be reversed.

TAYLOR, C. J., concurs in this dissent.